**UNITED STATES DISTRCIT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
**CASE NO:  8:13-cv-03047-SDM-AEP**

TARASHA GOODSON, on behalf of
herself and all other similarly situated,

     Plaintiff,

v.

COLLECTO, INC. d/b/a EOS/CCA,

     Defendant.

_____/

**DEFENDANT'S RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S SECOND AMENDED MOTION FOR CLASS CERTIFICATION**

COMES NOW, Defendant COLLECTO, INC. d/b/a EOS/CCA ("Collecto" or "Defendant"), by and through its undersigned counsel, and hereby files this Response in Opposition to Plaintiff's Second Amended Motion for Class Certification, and states as follows:

> **I.    Summary of Argument**

It is a fundamental tenet of law that Rule 23 cannot be utilized by a plaintiff or class member to impair a defendant's right to demand proof of every essential element of a claim. In addressing this specific issue, the Former Fifth Circuit stated:

> …the requisite proof…in no way hinges upon whether or not the action is brought on behalf of a class under Rule 23. It is axiomatic that a procedural rule cannot "abridge, enlarge, or modify any substantive right." Consequently, this court has no power to define differently the substantive right of individual plaintiffs as compared to class plaintiffs.

*See*, *State of Ala. vs. Blue Bird Body, Co., Inc.*, 573 F.2d 309, 318 (5th Cir. 1978), citing 28 U.S.C. § 2072.[1]

---

[1] The Eleventh Circuit Court of Appeals adopted as binding precedent all prior decisions of the former Fifth Circuit Court of Appeals issued prior to October 1, 1981. *See, Bonner v. City of Prichard, Ala*., 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

In keeping with this bedrock principle, the Eleventh Circuit Court of Appeals has held in the context of class actions that it: "cannot condone the use of a presumption as a 'shortcut' in resolving issues…where such elements are provable by plaintiffs and required for recovery." *Sikes v Teleline, Inc.,* 281 F.3d 1350, 1366 (11th Cir. 2002), abrogated by *Bridge v. Phoenix Bond & Indem. Co*., 553 U.S. 639 (2008).

In this class action, Plaintiff alleges that Collecto's use of a form collection letter violates the Fair Debt Collection Practice Act, 15 U.S.C. § 1692, et seq. ("FDCPA"). *See*, DE 16, generally. Obviously, not every obligation to pay falls under the purview of the FDCPA. *See, Oppenheim v. I.C. System, Inc*., 627 F.3d 833, 836-37 (11th Cir. 2010). Instead, the FDCPA limits it application to debts incurred "primarily for personal, family, or household purposes." *Id.*, *see also* 15 U.S.C. § 1692a(5). Whether each class member's obligation to pay meets the definition of "debt" under the FDCPA is a contested issue in this case.

As will be detailed in this brief, Plaintiff has failed to prove the "debt" element is subject to generalized proof and failed to provide a reliable methodology for resolving the individualized issue of the nature of each class member's debt without the case dissolving into mini-cases leading to mini-trials. Instead, Plaintiff implicitly requests this Court to ignore binding precedent in this Circuit by employing a presumption that all class members' debts fall under the purview of the FDCPA. If the Court were to indulge Plaintiff on this issue, the result would be an improper burden-shifting to Collecto and would effectively deny Collecto its Constitutionally protected right to trial by jury. *See Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 845–46, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999) (parties to a class action have a Seventh Amendment right to a jury trial on any legal issues they raise); *Ross v. Bernhard*, 396 U.S. 531, 541 (1970)(noting that

it is "settled ... that class action [parties] may obtain a jury trial on any legal issues they present.")

The Supreme Court has consistently recognized the historic importance of the right to trial by jury in American society:

> The right of trial by jury is of ancient origin, characterized by Blackstone as the glory of the English law and the most transcendent privilege which any subject can enjoy; and, as Justice Story said, 'the Constitution would have been justly obnoxious to the most conclusive objection if it had not recognized and confirmed it in the most solemn terms.' Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care…. [H]ere we are dealing with a constitutional provision which has in effect adopted the rules of the common law in respect of trial by jury as these rules existed in 1791. To effectuate any change in these rules is not to deal with the common law, qua common law, but to alter the Constitution.

*Dimick v. Schiedt*, 293 U.S. 474, 485-86 (1935)(internal citations omitted)

In *Parsons v. Bedford, Breedlove & Robeson*, 28 U.S. 433, 446 (1830), the Court recognized the integral place the right to trial by jury occupies in American society:

> The trial by jury is justly dear to the American people. It has always been an object of deep interest and solicitude, and every encroachment upon it has been watched with great jealousy…. One of the strongest objections originally taken against the constitution of the United States, was the want of an express provision securing the right of trial by jury in civil cases. As soon as the constitution was adopted, this right was secured by the seventh amendment of the constitution proposed by congress; and which received an assent of the people so general, as to establish its importance as a fundamental guarantee of the rights and liberties of the people.

*Id.*

Succinctly stated, granting *any* putative class member a presumption on the contested "debt" issue would run afoul of binding precedent in this Circuit, expose Collecto to paying

money damages to persons having no legitimate claims, and deny Collecto its Seventh Amendment right to have a jury determine the issue. For this and other reasons detailed below, Plaintiff's Second Amended Motion for Class Certification must be denied.

## II.    Plaintiff's Class Action Complaint.

Plaintiff filed this putative class action alleging that Collecto's form collection letter sent to attempt to collect unpaid bills owed to Verizon Wireless violates the Fair Debt Collection Practice Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"). *See,* DE 16, generally. For purposes of the Motion at bar, Collecto does not dispute that its dunning letter fails to comport with the requirements of the FDCPA based upon the Eleventh Circuit's decision in *Bradley v Franklin Collection Svcs., Inc.*, 739 F.3d 606 (11th Cir. 2014).[2] Instead, as will be discussed in detail below it is Collecto's position that Plaintiff cannot prove that every letter sent by Collecto to a putative class member is regulated by the FDCPA.

## III.    Proof that the debt was incurred "primarily for personal, family, or household purposes" is an essential element of every class member's claim.

The Eleventh Circuit has long recognized the "consumer debt" element of an FDCPA action to be an essential, threshold requirement to recovery. *See, Oppenheim v. I.C. System, Inc.*, 627 F.3d 833, 836-37 (11th Cir. 2010). In *Oppenheim*, the Eleventh Circuit explained:

> To recover under...the FDCPA..., a plaintiff must make a threshold showing that the money being collected qualifies as a "debt." The FDCPA...defines "debt" as:
>
> > any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

---

[2] Since the issue decided in *Bradley* has never been address by the United States Supreme Court, Collecto limits its "admission" to dunning letters sent to residents of those states comprising the 11th Federal Judicial Circuit.

> Accordingly, the FDCPA....appl[ies] only to payment obligations of a (1) consumer arising out of a (2) transaction in which the money, property, insurance, or services at issue are (3) primarily for personal, family, or household purposes. The statute thus makes clear that the mere obligation to pay does not constitute a "debt" under the FDCPA.

*Id.*

Accordingly, a plaintiff cannot establish a cause of action merely by demonstrating that he or she was the subject of collection activity proscribed by the FDCPA. *Dunham v. Lombardo, Davis & Goldman*, 830 F. Supp. 2d 1305, 1307 (S.D. Fla. 2011)(refusing to enter final default judgment where "Plaintiff ha[d] simply not provided any factual basis for finding that Defendant's activities relate to a 'consumer debt.'") This Court has granted directed verdict at the close of evidence in a jury trial where plaintiff failed to offer evidence that his debt came under the purview of the FDCPA. *See, Ritchie v Cavalry Portfolio Svcs., Inc.,* Case No. 08-01725 DE 99 (M.D. Fla. March 4, 2010) (Plaintiff failed to provide evidence that Sprint cellphone service was "rendered primarily for persona family or household purposes.")[3]

### IV.    Plaintiff's Second Amended Motion for Class Certification.

Via her Second Motion for Class Certification (DE 58) Plaintiff argues that certification of her proposed classes is proper under Rule 23(a), (b)(1), and (3) and asks this Court to certify two classes composed of "consumers" to whom Collecto sent collection letters on Verizon Wireless accounts. *Ibid.* at pp. 10 – 12. (emphasis added)

Plaintiff does not define "consumer" in her Motion. Since the FDCPA contains a definition of "consumer" ("any natural person obligated or allegedly obligated to pay any **debt**")(emphasis added), Collecto assumes Plaintiff is utilizing the statutory definition although not specifically referencing it in her Motion. *See,* 15 U.S.C. § 1692a(3). One is a "consumer" for

---

[3] A copy of Judge Kovachevich's Order in *Ritchie* is attached hereto as "Exhibit A."

FDCPA purposes only if the debt at issue arose "out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." *See,* 15 U.S.C. § 1692a(5). Accordingly, both classes are limited to "natural person[s] obligated or allegedly obligated to pay any obligation […] arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes[.]"

Plaintiff, recognizing that she must prove her debt is subject to the FDPCA, has provided a declaration attesting to the nature of her obligation to Verizon Wireless (DE 58-3). However, she has offered no evidence that any other class member's debt was incurred "primarily for personal, family, or household purposes." Instead, she first, half-heartedly in a footnote, claims that Collecto has essentially admitted that *every* class member's debt is subject to the FDCPA by responding to discovery directed at identifying account numbers for "consumers". *See,* DE 58 at p. 7 fn 6. However, the discovery requests themselves provided no definition of "consumers" leading Collecto to interpret "consumer" in the general sense, i.e. one who purchases goods or services. Perhaps, sensing the weakness in her "estoppel" argument based on the Eleventh Circuit's recent ruling in *Fenello v Bank of America, N.A.*, 577 Fed.Appx. 899 (11th Cir. 2014),[4] Plaintiff then offers the following unsupported, conclusory statements to attempt to convince the Court that every class member's debt meets the statutory definition:

- "Each of the putative class members allegedly became indebted to Verizon for a personal wireless phone bill." *See,* DE 58 at p. 7.
- "The debt at issue are 'debts' within the meaning of the FDCPA in that they arose from obligations or alleged obligations to pay money arising out of a transaction in which the money, property,

---

[4] In *Fenello*, the plaintiffs argued that even though original creditors are not subject to the FDCPA the Bank's use of a FDCPA-mandated notice stating it was a "debt collector" in a collection letter brought it under the restrictions of the statute. In rejecting this argument, the Court stated: "it rests on the fundamentally flawed assumption that a litigant can amend the definition of a statutorily-defined term." *Id.* 577 Fed.Appx. at 902.

insurance or service which were the subject of the transaction were primarily for personal, family, or household purposes." *Ibid.*

- "…Plaintiff has determined that Collecto sent __21,774__ form collection letters to Florida consumers…" *Ibid.* at p. 13. (emphasis in original)

Additionally, Plaintiff continually refers to the list of accounts produced by Collecto and Verizon as "consumer accounts" and to putative class members as "consumers". These conclusory assertions are evidence that Plaintiff recognizes she must prove her and the class members' debts are subject to the FDCPA. However, these assertions are not evidence from which it can be determined whether any putative class member's cell phone bill was in fact incurred primarily for personal, family, or household purposes.

Collecto itself does not maintain records demonstrating the "primary purpose" of the Verizon cellphones. *See,* Declaration of Peter Garland, attached hereto as "Exhibit B", at ¶ 6. When referring delinquent accounts to Collecto, Verizon Wireless provides digital information related to hundreds or thousands of accounts through a secure internet portal. *Ibid.* The digital information is downloaded into Collecto's databases and then, managed by proprietary software systems to assist in the collection process. *Ibid.* The information provided by Verizon Wireless consists mainly of demographic information on the account holder, e.g. name, address, telephone number, and account information such as amount due. *Ibid.* Verizon Wireless does not provide billing statements as part of the referral process nor does it provide Collecto with specific information related to charges that comprise the amount of the debt. *Ibid.* As a result, Collecto does not possess billing information demonstrating the primary purpose of the customer's use of the cellphone, i.e. whether the telephone is used primarily for personal or business purposes. *Ibid.*

**V.    The Results of a "Memory Survey" Commissioned by Collecto Provide Evidence that Resolution of the "Debt" Issue will be Fact-Driven.**

Collecto has no burden of proof on either the merits of Plaintiff's or any class member's FDCPA claim nor on the issue of whether certification of the classes sought would be proper. Instead, it is ultimately Plaintiff's burden to prove that each class member's debt is subject to the FDCPA and to also prove at this stage in the litigation that certification of the proposed classes comports with the requirements of Rule 23.

Nonetheless, in order to determine whether its belief that certification of the proposed cases would result in providing recovery to persons having no legitimate claims was well-founded, Collecto requisitioned a telephone survey using an unaffiliated third party. After reviewing Plaintiff's Second Amended Motion for Class Certification, Collecto retained New Partners Consulting, Inc., ("New Partners"), a teleservices provider, to conduct a memory survey of potential class members. *See*, Declaration of Jerry Samargia, attached hereto as "Exhibit C", at ¶¶ 9 – 10.

New Partners is based in Washington, D.C., and provides consulting and telecommunication services for a variety of clients. *Ibid.* at ¶ 4. New Partners's clientele includes the Miami Dolphins and the Academy of Motion Pictures and Science, i.e. the "Oscars". *Ibid.* While New Partners provides a variety of telecommunications services, one of the primary functions of New Partners has been and is conducting telephone surveys, i.e. "campaigns" regarding a variety of issues that are of importance to its clients. *Ibid.* at ¶ 5.

Collecto requested and New Partners agreed to conduct a survey using NP Teleservices by calling telephone numbers provided by Collecto. *Ibid.* at ¶ 10. NP Teleservices received two (2) lists of telephone numbers from Collecto—one containing telephone numbers that the person Collecto was attempting to contact "verified" as accurate (1,279 unique telephone numbers) and one containing telephone numbers located in the "home" field of Collecto's databases (19,609

unique telephone numbers). *Ibid.* NP Teleservices "scrubbed" both lists against the IMS database to identify potential cellular telephone numbers, which were then segregated from the remaining telephone numbers. *Ibid.* at ¶ 11. This resulted in 469 non-cellular telephone numbers that were located in the "verified" field of Collecto's databases and 10,125 non-cellular telephone numbers that were located in the "home" field of Collecto's databases. *Ibid.* The cellphone scrub was undertaken to attempt to ensure compliance with the federal Telephone Consumer Protection Act ("TCPA"), which regulates certain calls to cellular telephones. *Ibid.* NP Teleservices randomly isolated 2,500 of the non-cellular telephone numbers that were located in the "home" field of Collecto's databases and called each number up to two (2) times each over the course of several days to ask a series of questions. *Ibid.* at ¶ 12. NP Teleservices also called all 1,279 telephone numbers[5] that were located in the "verified" field of Collecto's databases up to two (2) times each over the course of several days to ask the same questions. *Ibid.* at ¶ 13.

As a consulting firm that provides teleservices, including polling/surveying, New Partners recognizes the inherent need that any survey it conducts be credible. *Ibid.* at ¶ 14. Therefore, steps are put in place for every survey to ensure its credibility. *Ibid.* With respect to the instant surveys, New Partners and NP Teleservices put measures in place to ensure the credibility of the survey results. *Ibid.* Two of the most important measures put in place were ensuring that employees conducting the surveys were not told the reason the surveys were being conducted or that the instant lawsuit even existed and making sure that the questions were drafted in an objective fashion. *Ibid.* Prior to conducting the survey, NP Teleservices worked in

---

[5] NP Teleservices manually dialed the 810 numbers (out of 1,279) identified as potential cellphones based on the IMS scrub to attempt to ensure compliance with the TCPA.

conjunction with counsel for Collecto to develop a "script" of questions to be asked.[6] *Ibid.* at ¶ 15.

The following is a summation of the results of the survey:[7]

- 26% of respondents indicated they were Verizon Wireless customers prior to February 2012.
- 43% of respondents who indicated they were Verizon Wireless customers prior to February 2012, stated they used their cellular telephones for business purposes at the time they were Verizon Wireless customers.
- 26% of respondents who indicated they were Verizon Wireless customers prior to February 2012, stated they owned their own business at the time they were Verizon Wireless customers.
- 9% of respondents who indicated they were Verizon Wireless customers prior to February 2012, stated their employer reimbursed them for a portion of their cellular telephone bill at the time they were Verizon Wireless customers.
- 11% of respondents who indicated they were Verizon Wireless customers prior to February 2012, stated they claimed a part of their cellphone bills as a deduction on their income tax return at the time they were Verizon Wireless customers.[8]

*Ibid.* at ¶ 17.

When analyzed in conjunction with the relevant requirements for class certification, the survey results demonstrate Plaintiff has failed to prove that the proposed classes are ascertainable, has proposed an impermissible fail-safe class, and has failed to prove that common issues predominate over individual inquiries.[9]

### VI.   Legal Standard.

---

[6] The complete script is attached to Mr. Samargia's Declaration as Exhibit 1.

[7] The complete results of the survey are attached to Mr. Samargia's Declaration as Exhibit 2.

[8] The results of a "memory survey" are admissible as evidence with respect to Plaintiff's Motion. *See, Debra B. v. Turlington*, 730 F.2d 1405 (11th Cir. 1984); *see also Schering Corp. v. Pfizer, Inc.*, 189 F.3d 218 (2nd Cir. 1999).

[9] To be clear, Defendant also disputes that the commonality element of Rule 23(a) has been satisfied. However, recognizing that the predominance inquiry is "far more demanding than the commonality requirement", Defendant will focus its argument on the predominance requirement of Rule 23(b). *See, Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997).

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal–Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2550, 180 L.Ed.2d 374 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979)). Accordingly, the burden of establishing the propriety of class certification rests with the advocate of the class. *Valley Drug Co. v. Geneva Pharms., Inc*., 350 F.3d 1181, 1187 (11th Cir.2003); *Jones v. Diamond*, 519 F.2d 1090, 1099 (5th Cir.1975). A statute creating the right to *seek* class certification does not thereby create a right to *obtain* class certification.  *See, Bowen v. First Family Fin. Servs., Inc*., 233 F.3d 1331, 1337-38 (11th Cir. 2000)("there exists a difference between the availability of the class action tool, and possessing a blanket right to that tool under any circumstance.")

Evidentiary proof is required to show compliance with Rule 23. *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432, 185 L.Ed.2d 515 (2013) (quoting *Dukes*, 131 S.Ct. at 2551–52). The party seeking class certification must prove compliance by a preponderance of the evidence. *See, Messner v. Northshore Univ. Health Sys*., 669 F.3d 802, 811 (7th Cir.2012); *In re Hydrogen Peroxide Antitrust Litig*., 552 F.3d 305, 320 (3d Cir.2009); *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc*., 546 F.3d 196, 202 (2d Cir.2008). The claims, defenses, relevant facts, and applicable substantive law must be understood in order to make a meaningful determination of the certification issues. *Madison v. Chalmette Refining, LLC*, 637 F.3d 551, 555 (5th Cir.2011). And the analysis will frequently "overlap with the merits of the plaintiff's underlying claim," since the "'class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Id*. at 2552 (quoting *Falcon*, 457 U.S. at 160).

**VII.    Binding Precedence Prevents this Court from Presuming the Class Members' Debts are "Consumer" or Shifting the Burden of Proof on that Issue to Collecto.**

The Eleventh Circuit Court of Appeals has consistently and unwaveringly held "the fact [] a case is proceeding as a class action does not in any way alter the substantive proof required to prove up a claim for relief" (*State of Ala. v. Blue Bird Body Co., Inc*., 573 F.2d 309, 315 (5th Cir. 1978)) and that class action claims are not entitled to "presumption[s] that would relieve plaintiffs of their burden of having to prove every element of a claim" and threaten to "provide recovery to some persons who had not proved" the essential elements of their claims.  *See, Sikes v. Teleline, Inc*., 281 F.3d 1350, 1365 (11th Cir. 2002), *abrogated by Bridge v. Phoenix Bond & Indem. Co*., 553 U.S. 639, 128 S. Ct. 2131, 170 L. Ed. 2d 1012 (2008).

In *Blue Bird*, plaintiff filed an anti-trust action against six manufacturers of school buses and sought certification of a nationwide class of behalf of various state entities. *Blue Bird*, 573 F.2d at 311. In order to prevail on a civil suit under the Sherman Act, a plaintiff is required to prove not only that the defendant violated the Act, but that the violation was a "material cause" of damage to the plaintiff commonly referred to as "impact" damages in antitrust cases. *Id*. at 317. At the district court level, the defendant argued class certification would be improper as "individual proof of injury and damages w[ould] be necessary as to each class member." *Id*. 573 F.2d at 319-320. The district court rejected the argument on the basis that accepting it "would effectively preclude the use of class actions in antitrust cases." *Id*. at 320. The defendant appealed and the Former Fifth Circuit reversed. In reaching its decision that the district court abused its discretion by certifying the nationwide class, the Court held:

> the requisite proof…in no way hinges upon whether or not the action is brought on behalf of a class under Rule 23. It is axiomatic that a procedural rule cannot "abridge, enlarge, or modify any substantive right." Consequently, this court has no power to define

> differently the substantive right of individual plaintiffs as
> compared to class plaintiffs.

*Id*., 573 F.2d at 318.

In reaching its decision, the Court noted "this Circuit places great importance on the 'impact' element of an antitrust cause of action" and "that there could be no recovery of any amount of damage 'where the jury could only speculate either as to its occurrence or as to its causal relationship to the anticompetitive activity.'" *Id.*, 573 F.2d at 327, citing *Shumate & Co., Inc., v National Ass'n of Sec. Deal., Inc.* 509 F.2d 147, 153 (5th Cir. 1975). The *Blue Bird* court noted in *Shumate* the district court's denial of certification of the anti-trust class "rested on [its] conclusion that even if a conspiracy was established by the plaintiffs' class, the controlling question as to liability was whether a class member had suffered injury." *Blue Bird,* 573 F.2d at 327 (internal citations omitted).  In affirming the district court's denial of class certification in *Shumate*, the Court stated:

> This case is different from one where liability can be shown as to
> all class members, with only the amount of damage to be
> determined as to each. In this antitrust case the proof of injury to
> business or property of each class member is critical for the
> determination of defendants' liability to any individual.

*Shumate*, Inc., 509 F.2d at 155.

Three years later in *Blue Bird*, the Court characterized the holding in *Shumate* as "a recognition by this Court that the fact that a case is proceeding as a class action does not in any way alter the substantive proof required to prove up a claim for relief." *Blue Bird*, 573 F.2d at 327.

Years later in *Sikes v Teleline, Inc.,* the Court considered an appeal of a district court order granting class certification in a RICO case based on defendants' alleged involvement in an automated interactive telephone game modeled on the television game show "Let's Make a

Deal." *Id.*, 281 F.3d 1350, 1354 (11th Cir. 2002). The district court certified a class consisting of "[a]ll natural persons who have been billed for telephone calls originating from their households made to the 900–number 'Let's Make a Deal' game and have not received cash prizes exceeding such charges." *Id.,* 281 F.3d at 1358. On appeal, the Eleventh Circuit Court held that in order to prove the plaintiff's and class members' RICO claims, plaintiff must prove that he and the class members were "a target of the scheme to defraud" and "relied to [their] detriment on misrepresentations made in furtherance of that scheme." *Id.* (internal citations omitted) While acknowledging that the district court "properly recognized that 'reliance is a necessary element of a civil RICO claim based on mail or wire fraud'", the Court held that the district court abused its discretion when it "determined that 'reliance may be virtually presumed' in this case." *Id.* In concluding that the district court committed error, the Court relied on its earlier decision in a similar case, *Andrews v. Am. Tel. & Tel. Co.*, 95 F.3d 1014, 1023 (11th Cir. 1996), in which it "rejected the propriety of allowing a presumption that would relieve plaintiffs of their burden of having to prove every element of a claim." *Sikes*, 281 F.3d at 1362. In *Sikes*, the Court outlined the circumstances warranting and the effect of a court granting a presumption on an issue, as follows:

> A presumption is generally employed to benefit a party who does not have control of the evidence on an issue. A presumption places a burden of production on the party against whom it is directed; this party must present evidence sufficient to rebut or meet the presumption, but the presumption does not shift to such party the burden of proof. In the case at hand, [defendant] has no evidence regarding whether the plaintiffs "relied" upon misrepresentations. The plaintiffs themselves are in control of this information. It would be unjust to employ a presumption to relieve a party of its burden of production when that party has all the evidence regarding that element of the claim.

*Id.*, 281 F.3d at 1362. (internal citations omitted)

In light of that legal standard, the Court held the district court's "[u]se of a presumption [was] improper because each individual plaintiff may be the only person with critical information about the content of the ad upon which he relied; this content is evidence necessary to determine whether the advertisement was misleading or fraudulent." *Id.*, 81 F.3d 1364. The Court held that it would be up to the "factfinder" to determine if the ads at issue were misleading and each plaintiff's burden to prove he/she relied on the advertisement. *Id.* Stated succinctly, the Court held: "We cannot condone the use of a presumption as a 'shortcut' in resolving issues where such elements are provable by the plaintiffs and are required for recovery." *Id.* at 1366

### VIII. Plaintiff has Failed to Demonstrate that Common Issues Predominate Over the Individualized Issues Concerning the Nature of Each Putative Class Members' Debt.

To satisfy Rule 23(b)(3), the questions in a class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over questions that are subject only to individualized proof. *See, In re Photochromic Lens Antitrust Litig.*, 8:10-CV-00984-T-27EA, 2014 WL 1338605, at *16 (M.D. Fla. Apr. 3, 2014)(Whittemore, J.)(citing *Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999, 1005 (11th Cir.1997)). "If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2009).

The Eleventh Circuit has long recognized that "[w]hether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action." *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1234 (11th Cir. 2000)(citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623, 117 S.Ct. 2231, 2249 138 L.Ed.2d 689 (1997)

In the instant case, the consumer debt element is essential to each class member's FDCPA claim and one for which the burden of proof rests squarely upon the Plaintiff and putative class members. It is undisputed that where an individual FDCPA plaintiff fails to carry her burden of proof on this essential element, her claim fails as a matter of law. *See, e.g., Ritchie* and *Dunham, supra*. Thus, in "considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action", the consumer debt element is of case-dispositive value for each and every putative class member. *Rutstein*, 211 F.3d at 1234.

Notwithstanding the importance of this contested, case dispositive element, Plaintiff has offered no evidence demonstrating that this issue can be resolved on a class-wide basis. Instead, Plaintiff presumptively asserts that "[t]he debts at issue are 'debts' within the meaning of the FDCPA[.]" *See,* DE 58 at p. 7. Absent, however, from Plaintiff's Motion is any ***evidence*** demonstrating that the any of the Verizon debts of the putative class members fall within the purview of the FDCPA. Similarly absent from Plaintiff's Motion is any ***evidence*** demonstrating that a determination of the nature of each class members' obligation to Verizon can be determined on a class-wide basis through generalized proof. This Court, in keeping with Supreme Court precedent, has unequivocally held that "[e]videntiary proof is required to show compliance with Rule 23." *In re Photochromic*, 2014 WL 1338605 at *5 (citing *Comcast Corp*, 133 S.Ct. at 1432)(quoting *Dukes,* 131 S.Ct. at 2551–52). Plaintiff's failure to offer any evidentiary proof as to this contested element that is essential to each class members' claim requires that the Court deny class certification.

Conversely, Collecto has put before the Court evidence suggesting that individualized issues exists amongst the putative class members with respect to the consumer debt element. Specifically, the results of the New Partners survey demonstrate that a significant percentage of

the underlying obligations of the potential class members may very well fall outside the purview of the FDCPA. As such, the record in this case demonstrates that the only essential and contested element of each putative class member's claim requires individualized treatment, rendering this case unsuitable for class treatment. *See, e.g., Neves v. Nationwide Credit, Inc.*, 1996 U.S. Dist. LEXIS 22241 (N.D. Ga. March 20, 1996)(refusing to certify FDCPA class where "plaintiff failed to show the court how it will be able to avoid -- with respect to each potential class member -- the uniquely individual task of determining whether the debt defendants sought to collect was incurred primarily for personal or business purposes."); *see also Lewis v. Jesse L. Riddle, P.C.*, 1998 U.S.Dist. LEXIS 20465 (W.D.La.1998).

In light of the lack of evidence supplied by Plaintiff and the survey results offered by Collecto, to adopt Plaintiff conclusory assertion as to the nature of each and every putative class member's debt would be to erroneously employ a "presumption that would relieve plaintiffs of their burden of having to prove every element of a claim" and threaten to "provide recovery to some persons who had not proved" the essential elements of their claims. *Sikes*, 281 F.3d at 1365. Moreover, implementing such a presumption would eviscerate Collecto's due process rights as well as its "guaranteed Seventh Amendment right to have a jury determine from the evidence at trial the critical issue" of whether the debt was "incurred *primarily* for personal, family, or household purposes" *See, Rink v. Cheminova, Inc.*, 203 F.R.D. 648, 652 (M.D. Fla. 2001); 15 U.S.C. § 1692a(5).

Here, as in *Sikes*, it is undisputed that Collecto "has no control over the evidence on [the consumer debt] issue." *Id.*, 281 F.3d at 1362. As Plaintiff has offered no class-wide evidence on this issue, it is, ostensibly, "[t]he [class members] themselves [who] are in control of this information." *Id.* Accordingly, to certify the classes proposed would be to impermissibly

"employ as presumption to relieve a party of its burden of production when that party has all evidence regarding that element of the claim." *Id.* An individual plaintiff would not be entitled to a presumption on the consumer debt element; the Court cannot employ a presumption to benefit absent class members. *See, e.g., Blue Bird*, 573 F.2d at 318 ("this court has no power to define differently the substantive rights of individual plaintiffs as compared to class members.")

Moreover, the presumption Plaintiff implicitly requests would erode Collecto's constitutional right to a trial by jury. *See, Rink*, 203 F.R.D. 648 (M.D. Fla. 2001)(Lazzara, J.). *Rink* involved a putative class action brought against a chemical manufacturer for the delivery of a defective product. *Id.* at 651. The plaintiffs argued that, notwithstanding the need for individualized determinations of causation and damages, the common issue of whether the defendants delivered a defective produce warranted class treatment. *Id.* at 652. Foreseeing the onslaught of "mini-trials", the Court denied certification. *Id.* Specifically, the Judge Lazzara held:

> Thus, as the Defendants correctly observe, the juries in the hundreds or thousands or tens of thousands of "mini-trials" on causation and damages would be required to reconsider the findings of the original jury in the liability case in order to compare and apportion fault. Accordingly, notwithstanding the initial jury's finding that the Defendants delivered a defective product, the Defendants would still have the right to make an evidentiary presentation at any mini-trial in order to acquaint the jury with all of the facts and circumstances surrounding the delivery of the defective product in an effort to convince that jury that fault should be apportioned among other individuals and entities. To conclude otherwise would be tantamount to depriving the Defendants of their guaranteed Seventh Amendment right to have a jury determine from the evidence at trial the critical issue of apportionment of fault.

*Id.*

The Supreme Court has long recognized "that class action [parties] may obtain a jury trial on any legal issues they present." *Ross*, 396 U.S. at 541. In the instant case, as in *Rink*, it is undisputed that Collecto has a "guaranteed Seventh Amendment right to have a jury determine from the evidence at trial the critical issue of" whether or not the debts of the putative class members were incurred primarily for personal, family or household purposes. *Id.*, 203 F.R.D. at 652; *see also, Dimick*, 293 U.S. at 486 ("Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care.") The questions posed in the New Partners survey are the very same types of questions that an attorney defending an FDCPA case would typically ask a plaintiff in beginning to explore the nature of the underlying obligation. The results of the survey demonstrate that employing a presumption on the consumer debt issue for the benefit of absent class members would not only contravene Collecto's constitutional rights, but would be inherently unjust as a significant number of survey respondents indicated that they used their Verizon Wireless cell phones for business purposes.

Because Plaintiff offers no evidence that this essential and contested element of the putative class members' claims is susceptible to generalized proof, and because Collecto has demonstrated that resolution of this issue instead requires a series of individualized "mini-trials", the predominance requirement is not satisfied and class certification must be denied. *See, e.g., Allapattah Services, Inc. v. Exxon Corp.*, 333 F.3d 1248, 1260-61 (11th Cir. 2003) *aff'd sub nom. Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546 (2005)("predominance is met when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position"); *Photochromic Lens*, 2014 WL 1338605 at *17*("individual treatment of the *essential*

elements of a case precludes certification")(emphasis in original); *Marino v. Home Depot U.S.A., Inc.*, 245 F.R.D. 729, 737 (S.D. Fla. 2007)(Denying class certification as an individualized inquiry as to the circumstances surrounding each class members' transaction "would result in numerous 'mini-trials' on the issue of whether the first element of a FDUTPA claim had occurred.")

### IX. Plaintiff's Proposed Classes of "Consumers" Constitute Non-Ascertainable, Fail-Safe Classes.

The Court cannot certify the proposed classes as Plaintiff has failed to demonstrate that the proposed classes of "consumers" are ascertainable. Moreover, by limiting her proposed class definitions to solely persons capable of satisfying the only contested element in this case without demonstrating a method by which such persons can be readily ascertained, Plaintiff has proposed impermissible "fail-safe" classes.

#### a. Plaintiff has failed to demonstrate that the proposed classes of "consumers" are ascertainable.

"It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." *DeBremaecker v. Short,* 433 F.2d 733, 734 (5th Cir. 1970); *see also, Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) ("Before a district court may grant a motion for class certification, a plaintiff seeking to represent a proposed class must establish that the proposed class is 'adequately defined and clearly ascertainable.'").

"[A] plaintiff must show, by a preponderance of the evidence, that the class is currently and readily ascertainable based on objective criteria, and a trial court must undertake a rigorous analysis of the evidence to determine if the standard is met." *Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013)(internal citations omitted). "Ascertainability mandates a rigorous

approach at the outset because of the key roles it plays as part of a Rule 23(b)(3) class action lawsuit." *Id.* at 307. "A plaintiff may not merely propose a method of ascertaining a class without any evidentiary support that the method will be successful." *Id.* at 306. "If a class cannot be ascertained in an economical and 'administratively feasible' manner, significant benefits of a class action are lost." *Id.* at 307 (internal citations omitted). "Accordingly, a trial court should ensure that class members can be identified without extensive and individualized fact-finding or 'mini-trials,' a determination which must be made at the class certification stage." *Id.*; *see also, Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 359 (3d Cir. 2013)("the ascertainability requirement focuses on whether individuals fitting the class definition may be identified without resort to mini-trials").

In *Carrera*, the plaintiff brought suit under the Florida Unfair and Deceptive Trade Practices Act alleging that the defendant falsely and deceptively advertised its diet supplement. *Id.*, 727 F.3d at 304 – 305. The Third Circuit framed the ascertainability issue as follows:

> In this case, the ascertainability question is whether each class member purchased WeightSmart in Florida. If this were an individual claim, a plaintiff would have to prove at trial he purchased WeightSmart. A defendant in a class action has a due process right to raise individual challenges and defenses to claims, and a class action cannot be certified in a way that eviscerates this right or masks individual issues. A defendant has a similar, if not the same, due process right to challenge the proof used to demonstrate class membership as it does to challenge the elements of a plaintiff's claim. Ascertainability provides due process by requiring that a defendant be able to test the reliability of the evidence submitted to prove class membership.

*Id.* at 307 (internal citations omitted).

In defining the plaintiff's obligation with respect to the ascertainability requirement, the Court held:

The method of determining whether someone is in the class must be "administratively feasible." A plaintiff does not satisfy the ascertainability requirement if individualized fact-finding or mini-trials will be required to prove class membership. Administrative feasibility means that identifying class members is a manageable process that does not require much, if any, individual factual inquiry.

The type of challenge to the reliability of evidence that is required will vary based on the nature of the evidence. For example, if Carrera produces retailer records that purport to list purchasers of WeightSmart, Bayer can challenge the reliability of those records, perhaps by deposing a corporate record-keeper. In sum, to satisfy ascertainability as it relates to proof of class membership, the plaintiff must demonstrate his purported method for ascertaining class members is reliable and administratively feasible, and permits a defendant to challenge the evidence used to prove class membership.

*Id.*, 307-08 (internal citations omitted).

In the instant case, Plaintiff expressly concedes, as she must, that only "consumers" are entitled to recover under the FDCPA. *See,* DE 58 at p. 19 – 20. Accordingly, in order to certify the proposed classes, the Court must make a threshold determination that the identities of persons meeting the definition of "consumer" "can be ascertained by reference to objective criteria [that is] administratively feasible [and] does not require much, if any, individual inquiry." *Bussey v. Macon County Greyhound Park, Inc.*, 562 Fed. Appx. 782, 787 (11th Cir. 2014)(internal citations omitted). Furthermore, it is Plaintiff's burden to demonstrate that "h[er] purported method for ascertaining [consumer debtors] is reliable and administratively feasible, and permits a defendant to challenge the evidence used to prove class membership." *Carrera*, 727 F.3d at 307. Plaintiff does not even suggest a means by which consumers can be ascertained and separated from non-consumers who otherwise meet the proposed class definitions, let alone any method by which Collecto could "test the reliability of the evidence submitted to prove class membership." *Id.* Instead, Plaintiff implicitly requests the Court apply a presumption that each

class members' debt was incurred primarily for personal family or household purposes "as a 'shortcut' in resolving issues […] provable by plaintiffs and required for recovery." *Sikes,* 281 F.3d at 1366. Not only does this request run afoul of biding precedent, but it wholly ignores the well settled principal that "[a] defendant in a class action has a due process right to raise individual challenges and defenses to claims, and a class action cannot be certified in a way that eviscerates this right or masks individual issues." *Carrera*, 727 F.3d at 307. Because Plaintiff has failed offer evidence demonstrating that the proposed classes of "consumers" are ascertainable, the Court cannot certify the proposed classes.

### b.  Plaintiff has proposed impermissible fail-safe classes.

By ostensibly incorporating the contested consumer debt element into her proposed class definitions in the absence of a methodology by which those persons capable of satisfying this element can be ascertained, Plaintiff has proposed impermissible fail-safe classes. A fail-safe class is "a class whose membership can only be ascertained by a determination of the merits of the case because the class is defined in terms of the ultimate question of liability." *Rodriguez v. Countrywide Home Loans, Inc.,* 695 F.3d 360, 369–70 (5th Cir.2012) (citation omitted); *accord Messner v. Northshore Univ. HealthSystem,* 669 F.3d 802, 825 (7th Cir.2012) (defining a fail-safe class as "one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim"). A fail-safe class creates a situation in which "[e]ither the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment." *Randleman v. Fid. Nat. Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011).

To the extent Plaintiff's use of the term "consumer" in her proposed class definitions is meant to limit membership to persons capable of satisfying the consumer debt element, one's membership in the classes proposed by Plaintiff can be determined only by determining whether one's debt was incurred "primarily for personal, family, or household purposes"–an essential element

of each claim. That is, of the 21,774 "putative class members" Plaintiff has identified, only those persons whose Verizon Wireless debt was incurred "primarily for personal, family, or household purposes" may be properly included in the class. Conversely, those persons within the 21,774 putative class members who cannot demonstrate that their Verizon Wireless obligation meets the definition of "consumer debt" must not be included in the class. To hold otherwise would be condone the payment of damages to persons without legitimate claims, a clear and impermissible infringement of Collecto's substantive rights. As Plaintiff has failed to demonstrate a method by which "consumers" can be identified, Plaintiff has necessarily proposed impermissible fail-safe classes in which "whether a person qualifies as a member depends on whether the person has a valid claim." *Messner,* 669 F.3d at 825).

### X.   The Court cannot certify the proposed classes under Rule 23(b)(1).

The United States Supreme Court has explained that Rule 23(b)(1) "takes in cases where the party is obliged by law to treat the members of the class alike (a utility acting toward customers; a government imposing a tax), or where the party must treat all alike as a matter of practical necessity (a riparian owner using water as against downriver owners)." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997). In the instant case, the results of the New Partners survey demonstrate that the putative classes may contain persons whose underlying obligation is not subject to the FDCPA. Accordingly, Plaintiff has failed to demonstrate that Collecto is "obliged by law to treat the member of the [proposed] class alike." *Amchem Products, Inc.*, 521 U.S. at 614.

More importantly, the Eleventh Circuit has long held that "only actions seeking declaratory or injunctive relief can be certified under Rule 23(b)(1)(A)." *Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1195 (11th Cir. 2009)(citing *In re Dennis Greenman Sec. Litig.*, 829 F.2d 1539, 1545 (11th Cir.1987)). In the instant case, Plaintiff is not seeking, nor could she seek,

injunctive relief. *See,* DE 16, generally; *Sibley v. Fulton DeKalb Collection Serv.*, 677 F.2d 830, 834 (11th Cir. 1982).

### XI.    Plaintiff's reliance upon non-binding, distinguishable case law does not compel certification of the proposed classes.

Plaintiff entire argument with respect to the "consumer debt" element is relegated to a footnote in which Plaintiff asserts that "[t]o the extent Defendant contends that some of the Verizon debts were business debts and not consumer debts, this argument is not a basis to deny class certification." *See,* DE 58 at FN 6. In support of this argument, Plaintiff relies upon *Hicks v. Client Services, Inc.,* No. 07–61822–CIV, 2008 WL 5479111 (S.D.Fla. Dec. 11, 2008), *Gold v. Midland Credit Mgt., Inc.*, 13-CV-02019-BLF, 2014 WL 5026270 (N.D. Cal. Oct. 7, 2014) and *Macarz v. Transworld Sys., Inc.*, 193 F.R.D. 46 (D. Conn. 2000). However, Plaintiff's reliance upon these cases is misplaced, as these cases are factually distinguishable and did not consider the arguments raised by Collecto in the instant case.

With respect to *Hicks* and *Macarz*, both of these cases advance the same, fundamentally flawed two-part reasoning. First, the opinions state that if the consumer debt issue "precluded certification, there would be no class actions under the FDCPA." *Hicks*, 2008 WL 5479111 at * 6. Next, each case concludes that the class members themselves "should be able to provide information regarding the debts, and proper drafting of the claim form may help exclude non-consumer debts." *Id.*

With respect to the use of a claim form to "help" exclude non-consumer debts from the putative class, courts have generally recognized that "[f]orcing [defendants] to accept as true absent persons' declarations that they are members of the class, without further indicia of reliability, would have serious due process implications." *Marcus v. BMW of N.A., LLC*, 687 F.3d 583, 594 (3d Cir. 2012); *see also*, *Carrera*, 727 F.3d at 308 ("plaintiff must demonstrate his

purported method for ascertaining class members is reliable and administratively feasible, and permits a defendant to challenge the evidence used to prove class membership."); *Karhu v. Vital Pharm., Inc.*, 13-60768-CIV, 2014 WL 815253 (S.D. Fla. Mar. 3, 2014); *Perez v Metabolife Inern., Inc.*, 218 F.R.D. 262, 269 (S.D. Fla. 2003).

The inherent relaxation of the substantive proof requirement implicated by the use of a "claim form" to satisfy a material and contested element of each class members claim is at odds with the importance placed upon due process by the Eleventh and former Fifth Circuit in the class action context. *See, Shumate, Sikes* and *Blue Bird*, *supra.* Simply stated, the rationale advanced by the cases relied upon by Plaintiff cannot be reconciled with the binding precedent on the mechanics of Rule 23. As Judge Cohn explained in rejecting the use of claim forms to identify class members in *Karhu*:

> Nor will the Court trust individuals to identify themselves as class members through the submission of affidavits. Accepting affidavits of Meltdown purchases without verification would deprive VPX of its due process rights to challenge the claims of each putative class member. On the other hand, allowing VPX to contest each affidavit would require a series of mini-trials and defeat the purpose of class-action treatment. Using affidavits to determine class membership would also invite fraudulent submissions and could dilute the recovery of genuine class members.
>
> In short, Karhu has not suggested any practical means of verifying class membership through existing evidence, and the Court will not allow individuals to identify themselves as class members solely upon a sworn statement. Karhu has therefore failed to demonstrate that the Proposed Classes are ascertainable. This issue alone justifies denial of the Motion[.]

*Id.*, 2014 WL 815253 at *3 (internal citations omitted).

Similarly, in *Perez,* Judge Huck held:

> Although Plaintiffs suggested that class membership could be determined through affidavits and fact sheets, allowing such uncorroborated and self-serving evidence without giving

> Defendant an opportunity to challenge the class member's evidentiary submissions would likely implicate Defendant's due process rights. [...] Thus, any written submissions that do not give the Defendant an opportunity to challenge the memory or credibility of the individual making that averment would provide inadequate procedural protection to the Defendant. Therefore, individualized mini-trials would be required even on the limited issue of class membership.

*Id.*, 218 F.R.D. at 269.

It is difficult if not impossible to believe that in light of the well-settled principals set forth in *Sikes, Shumate,* and *Blue Bird*, the Eleventh Circuit would approve certification of an FDCPA class in the absence of generalized proof on an essential element. It is even harder to conceive of the Eleventh Circuit approving of the use of a "claim form" as a substitute for Collecto's "guaranteed Seventh Amendment right to have a jury determine from the evidence at trial the critical issue" of whether the "debt" falls within the purview of the FDCPA. *See, Rink*, 203 F.R.D. at 652.

In light of the foregoing binding precedent, the Court cannot rely on the rationale advanced by *Hicks* and *Macarz* to grant certification. *See, McGrath v. Kristensen*, 340 U.S. 162, 177-78 (1950)(Jackson, concurring)("Precedent, however, is not lacking for ways by which a judge may recede from a prior opinion that has proven untenable and perhaps misled others"). Moreover, unlike the defendants in *Hicks* and *Macarz,* Collecto's contention that the proposed classes may contain non-consumers is not speculative, but rather supported by the results of the New Partners survey.

With respect to the former half of the two-part analysis advanced by *Hicks* and *Macarz*, the contention that in the event the consumer debt issue "precluded certification, there would be no class actions under the FDCPA" is both inaccurate and insufficient to justify certification of a

class in the absence of generalized proof on an essential element. *Collins*, 290 F.R.D. at 700 (citing *Hicks*, 2008 WL 5479111 at * 6).

There are certain debts, such as medical debts and student loans, which are inherently "consumer" in nature. In the event that unlawful collection activities were directed at a class of such debtors by a debt collector in a uniform fashion, class certification could be proper. More importantly, the fact that the elements of an FDCPA claim may make certification of a particular class of claimants difficult does not relax Plaintiff's burden of proof under Rule 23 or justify a departure from the rigorous analysis required to be conducted at the certification stage. *See, e.g., Bowen v. First Family Fin. Servs., Inc*., 233 F.3d 1331, 1337-38 (11th Cir. 2000).

In *Bowen*, the Eleventh Circuit responded to a similar argument advanced by the lead plaintiff in a putative class action brought under the Truth in Lending Act:

> [W]e recognize, of course, that a class action is an available, important means of remedying violations of the TILA. However, there exists a difference between the availability of the class action tool, and possessing a blanket right to that tool under any circumstance. An intent to create such a "blanket right"…to litigate by class action cannot be gleaned from the text and the legislative history of the TILA.

*Id.*, at 1337 – 38. (internal citations omitted)

There is no denying that the FDCPA provides class remedies and therefore, envisions class actions being pursued. However, as with the TILA, a "blanket right"…to litigate by class action cannot be gleaned from the text and the legislative history of the [FDCPA]." *See, Bowen*, 233 F.3d at 1337 – 38. As Justice Holmes noted nearly a century ago, "the word 'right' is one of the most deceptive of pitfalls; it is so easy to slip from a qualified meaning in the premise to an unqualified one in the conclusion. Most rights are qualified." *Am. Bank & Trust Co. v. Fed. Reserve Bank of Atlanta*, 256 U.S. 350, 358, 41 S. Ct. 499, 500, 65 L. Ed. 983 (1921).

As for Plaintiff's reliance on *Gold,* in addition to adopting the flawed two-part analysis discussed above, the Court in *Gold* concluded that certification of an FDCPA class was appropriate notwithstanding the absence of class-wide proof as to the nature of each underlying debt on the basis that "[i]f, after the certification of the class, Defendants discover that class identification is unworkable or unreliable, they may move to decertify the class." *Id.*, 2014 WL 5026270 at *8. This reasoning is inconsistent with the established principal that "under Rule 23 it is the plaintiffs, as the moving party, who bear the burden of proving that class certification is appropriate because class actions are not an automatic entitlement under our rules of civil procedure." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1196 (11th Cir. 2003).

In *In re Am. Med. Sys., Inc.*, the Sixth Circuit addressed a district court order similar to the decision in *Gold* in which the lower court impermissibly shifted the burden from plaintiff to defendant at the class certification stage. *Id.*, 75 F.3d 1069 (6th Cir. 1996). In granting the defendant's petition for a writ of mandamus and directing the district court to decertify the class, the Circuit Court held:

> Petitioners also claim that the district judge impermissibly shifted the burden of proof to petitioners on the class certification question. The record reflects that the certification hearing proceeded "in the reverse:" the district judge ordered defendants to "show cause why [the court] shouldn't certify a class." As earlier noted, this is in contradiction to unequivocal pronouncements by the Supreme Court and this court that the burden of establishing the elements of a class action rests on the party seeking certification. *See Falcon,* 457 U.S. at 161, 102 S.Ct. at 2372; *Senter,* 532 F.2d at 522.
>
> In his answer, the district judge states that this perception ignores the fact that the district court reviewed ample memoranda and supporting documentation supplied by the parties prior to the hearing, and that the court's direction was no more than an attempt to focus the argument on the most troublesome points. We recognize that, as a practical matter, the course of oral argument often proceeds this way without resulting in an impermissible

> shifting burden of proof. We might be able to accept this argument if the court's orders contained findings based upon the evidence submitted by the plaintiffs in support of their quest for class certification. However, as just illustrated, the plaintiffs' submissions miss the mark. Moreover, the district judge's "findings" merely parrot the language of Rule 23, and are not findings in any true sense. Thus, we can only conclude that the practical effect of the proceeding below was to place the burden on defendants to disprove plaintiffs' "entitlement" to class certification.

*Id.* at 1086.

In the instant case, to certify the proposed classes in the absence of evidence demonstrating that the nature of each underlying debt can be determined on a class wide basis and in the face of evidence that the proposed classes may contain debts not subject to the FDCPA would impermissibly excuse Plaintiff from her burden to prove that class certification is appropriate. To follow the rationale championed by the *Gold* court would constitute an exercise in reverse that is at odds with Rule 23 and binding precedent.[10]

WHEREFORE Defendant Collecto, Inc. respectfully requests an order from this honorable Court DENYING Plaintiff's Second Amended Motion for Class Certification.

## **REQUEST FOR ORAL ARGUMENT PER LOCAL RULE 3.01(j)**

Pursuant to Local Rule 3.01(j), the undersigned respectfully requests an opportunity to present oral argument to this Honorable Court regarding Plaintiff's Renewed Motion for Class Certification and Appointment of Class Counsel, which the undersigned estimates will require one (1) hour of time.

---

[10] The *Gold* decision cites to *Murray v. GMAC Mortg. Corp.*, 434 F. 3d 948 (7th Cir. 2006) for the proposition that "constitutional questions are best addressed after class certification". *See, Gold*, 2014 WL 5026270 at *5. However, the Court in *Murray* merely held that applying constitutional limits to an allegedly excessive award should be done after certification. *See, Murray*, 434 F. 3d at 954.

Respectfully submitted,

/s/ Dale T. Golden
Dale T. Golden, Esq.
Fla. Bar No.: 0094080
/s/ Benjamin W. Raslavich
Benjamin W. Raslavich, Esq.
Fla. Bar No.: 0102808
**GOLDEN SCAZ GAGAIN, PLLC**
201 North Armenia Avenue
Tampa, Florida 33609
P - (813) 251-5500
F- (813) 251 - 3675
dgolden@gsgfirm.com
braslavich@gsgfirm.com
Attorneys for Collecto, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of Court by using the CM/ECF system which will send notice of electronic filing to all counsel of record this 24th day of April, 2015.

/s/ Benjamin W. Raslavich
Benjamin W. Raslavich, Esq.
Fla. Bar No.: 0102808